IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRANDEN WALLACE,

    Plaintiff,

v.

ERIC HOUSTON, et al.,

    Defendants.

Civil Action No. 12-820-GMS

## MEMORANDUM

### I. INTRODUCTION

The plaintiff Branden Wallace ("Wallace") filed this *pro se* action on June 25, 2012. (D.I. 2.) In his complaint, Wallace asserted constitutional tort claims, pursuant to 42 U.S.C. § 1983, and state tort law claims against defendants Eric Huston ("Huston"), Phillip Graham ("Graham"), Gregory Simpler ("Simpler"), and John Doe(s), in connection with Wallace's arrest on or about July 22, 2010. (*Id.*) The John Doe(s) were then-unknown members of the Delaware Police's Special Operations Response Team ("SORT"). (*Id.* ¶ 7.) After some discovery, Wallace filed an amended complaint on November 18, 2013, replacing the John Doe(s) with the following specific members of the SORT, alleged to have been involved in Wallace's arrest: Eric Daniels ("Daniels"), Andrew Hudak ("Hudak"), James Cras ("Cras"), Scott Galbreath ("Galbreath"), David Chorlton ("Chorlton"), Ralph Thomas ("Thomas"), Roger Davis ("Davis"), Timothy Aube ("Aube"), and Jason Russo ("Russo") (collectively, the "Newly Added Defendants"). (D.I. 54.) Presently before the court is a motion for summary judgment, filed on behalf of all the defendants (collectively,

"the Defendants").[1] (D.I. 110.) For the reasons that follow, the court will grant the Defendants' motion for summary judgment.

## II. BACKGROUND

On April 1, 2010, Officers Huston and Simpler and Probation Officer Graham completed a probation compliance search of a residence believed to belong to Wallace and his girlfriend Johanna Garcia ("Garcia"), both of whom were on probation. (D.I. 112 at A-80, A-85; D.I 113 at A-135.) The officers seized drugs, a gun, and ammunition from the premises. (*Id.* at A-135–37.) Garcia was arrested, but Wallace was not present. (*Id.* at A-138.) Huston ultimately obtained arrest and search warrants for Wallace, to be executed at the Days Inn in Newark, Delaware. (*Id.* at A-123, A-131.)

Wallace's causes of action stem from his arrest the night of July 22 or early morning July 23, 2010, at the Days Inn hotel. Although many of the facts are in dispute, members of the SORT executed the search warrant in the middle of the night while Wallace was sleeping in a hotel room with Garcia. After an attempt to breach the door to the room failed, Aube broke the window to allow the SORT to gain access. (*Id.* at A-140.) Three members of the team—Daniels, Thomas, and Hudak—made contact with Wallace in order to secure his arrest. (*Id.* at A-76, A-82, A-87.) Daniels struck Wallace with a shield in the head—whether accidentally or purposefully is contested—during the arrest. (*Id.* at A-76.) The blow caused a two-centimeter laceration, which subsequently had to be closed with a staple. (D.I. 120 at A-114.) Thomas also stunned Wallace with a Taser between one and three times. (D.I. 113 at A-87–88.) The parties dispute the extent to which Wallace resisted arrest and whether he was already handcuffed when force was applied to secure his arrest.

---

[1] Wallace's pleadings omit or misspell several of the Defendants' actual names. For uniformity, the court adopts the correct spelling.

Wallace asserts claims for excessive force in violation of the Fourth Amendment and § 1983 against Daniels, Thomas, and Hudak.[2] (D.I. 54, ¶ 45.) Wallace also asserts failure to intervene claims against Daniels, Thomas, Hudak, and Cras for failing to prevent the misuse of force.[3] (*Id.* ¶ 47.) Finally, Wallace asserts a number of Delaware state tort law claims: assault and battery against Daniels and Hudak (*Id.* ¶ 49); negligent infliction of emotional distress against Daniels and Hudak (*Id.* ¶ 50); and negligent, reckless, or intentional infliction of emotional distress against all Defendants. (*Id.* ¶¶ 51, 52.)

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material fact exists, the district court must view the evidence in a light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476

---

[2] Wallace also asserts a claim for cruel and unusual punishment in violation of the Eighth Amendment and § 1983 against Daniels alone for his conduct. (D.I. 54, ¶ 46.) As the Defendants' brief points out (and Wallace does not challenge), the Eighth Amendment only serves as a safeguard for inmates in penal institutions. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("[T]he Eighth Amendment ... is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions ...."). Thus, the court need not address this claim.

[3] Wallace initially asserted failure to intervene claims against all of the Defendants. (D.I. 2, ¶ 47.) In his answering brief, however, Wallace concedes that "Houston [sic], Graham, Simpler, Galbreath, Chorlton, Davis, Aube, and Russo did not have any realistic opportunity to intervene ...." (D.I. 119 at 17.) Wallace's failure to intervene claims against these defendants are abandoned.

3

F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing Fed. R. Civ. P. 56(e)).

Because Wallace proceeds *pro se,* his pleadings are liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, even a *pro se* plaintiff still has "the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'" *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A plaintiff's *pro se* status "does not eliminate [his] obligation to allege specific facts, substantiated by evidence on the record." *Harp v. Rahme*, 984 F.Supp.2d. 398, 409 (E.D. Pa. 2013).

## IV. DISCUSSION

The Defendants argue that summary judgment is appropriate because (1) Wallace's claims against the Newly Added Defendants are untimely, (2) Wallace has failed to offer evidence supporting all of the elements of his excessive force claims, (3) the Defendants are entitled to qualified immunity, and (4) the court should decline to exercise jurisdiction of the supplemental state law claims. (D.I. 111.)

### A. <u>Statute of Limitations</u>

Each of Wallace's claims is subject to a two-year statute of limitations. *See Gibbs v. Deckers*, 234 F. Supp. 2d 458, 461 (D. Del. 2002) ("Section 1983 claims are characterized as personal injury claims, and district courts must apply the state statute of limitations for personal injury claims."); *see also* 10 Del. C. § 8119 (imposing a two-year statute of limitations for personal injury claims). Because the events in question occurred July 23, 2010, at the latest, Wallace was

4

obligated to bring his claims before July 23, 2012. The original complaint against Huston, Graham, and Simpler was filed within this time, on June 25, 2012. (D.I. 2.) The amended complaint naming the Newly Added Defendants, however, was filed on November 18, 2013, after the two-year statutory deadline. Therefore, in order to take advantage of the original filing date and avoid the time bar, Wallace's amended complaint must satisfy the "relation back" provision of Federal Rule of Civil Procedure 15.

In particular, because Wallace's amended complaint added new parties, he must satisfy two prongs of Rule 15. First, the amended or newly added claims must "ar[i]se out of the conduct, transaction, or occurrence set out . . . in the original pleading" Fed. R. Civ. P. 15(c)(1)(B). Second, the newly added party must, within 120 days of service the original complaint, "receive[] such notice of the action that it will not be prejudiced in defending on the merits," and "kn[o]w or should . . . know[] that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

There is no dispute that the first prong is satisfied—the claims arise out of the "same conduct, transaction, or occurrence," *i.e.*, Wallace's arrest. Moreover, Wallace is correct that, in the Third Circuit, his lack of knowledge regarding the identities of the SORT members is sufficient to constitute a "mistake" under Rule 15. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 208 (3d Cir. 2006) ("It is of no consequence that [plaintiff's] mistake resulted from lack of knowledge, rather than mere misnomer. Although a majority of courts have held that only a 'misnomer or misidentification' of an existing party can constitute a 'mistake concerning the identity of the proper party' under Rule 15(c), there is no linguistic basis for this distinction. A 'mistake' is no less a 'mistake' when it flows from lack of knowledge as opposed to inaccurate description."

5

(internal citations omitted)). Wallace spends the entirety of his briefing on this point, however, and fails to address the notice aspect of Rule 15(c).

The court finds that the claims against the Newly Added Defendants in the amended complaint fail to relate back to the original complaint. First, there is no evidence supporting an inference that the Newly Added Defendants had actual notice of the lawsuit within 120 days of the original service—indeed, although the burden is on Wallace to establish notice, many of the Newly Added Defendants offered sworn declarations that they *did not* actually know of the lawsuit until they were served with the amended complaint in November 2013. (D.I. 112 at A-72–87.) Second, on the issue of constructive notice, the court considers the Third Circuit's decision in *Garvin v. City of Philadelphia* to be directly on point. 354 F.3d 215 (3d Cir. 2003). Under *Garvin*, notice may be imputed to an unnamed party under a "shared attorney" or "identity of interest" theory. *Id.* at 223–27. Wallace cannot satisfy either theory.

Although each of the Defendants are represented by the Delaware Attorney General's Office, the Newly Added Defendants were not represented at any time during the relevant 120-day period, and therefore the shared attorney theory fails. *See id.* at 225 ("[T]he fundamental issue here is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, *within the 120 day period, had some communication or relationship with, and thus gave notice of the action to the newly named defendant.*" (quoting *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 196–97 (3d Cir. 2001))). Although Wallace's original complaint noted that the unnamed John Does were members of the SORT (D.I. 2, ¶ 7), the Third Circuit in *Garvin* specifically rejected a district judge's holding that knowledge could be imputed to newly added defendants merely where "counsel knew or should have known within the relevant time period that joinder of the additional official was a distinct *possibility*." *Garvin*, 354 F.3d at 225

(emphasis added) (quoting *Heinly v. Queen*, 146 F.R.D. 102, 106 (E.D. Pa. 1993)); *see also id.* ("The *Heinly* court only required that the shared attorney have actual notice of the possibility that others would be named in order to impute notice to the later named defendants. . . . *Heinly*'s holding . . . is not good law."). It was Wallace's obligation to come forward with evidence giving rise to an inference of notice by virtue of the shared attorney. The court declines "to pile assumption on top of assumption to reach a conclusion, counter to the facts, that the officers had some type of notice of this action within 120 days of its institution." *See id.* at 227.

Under the identity of interest theory, the court "will impute notice if the parties are so closely related in their business operations or other activities that filing suit against one serves to provide notice to the other of the pending litigation." *Id.* Perhaps because the record does not support an inference of such a close relationship, Wallace makes no attempt to argue this theory. The originally named defendants were Huston, Graham, and Simpler. At best, these original defendants and the Newly Added Defendants are colleagues—even acting under this generous assumption, the court finds "they do not share a sufficient nexus of interests" to impute knowledge to the Newly Added Defendants. *See id.*

Having failed to satisfy the elements of Rule 15(c), Wallace's amended complaint does not "relate back" to the filing date of the original complaint. Thus, all of the claims against the Newly Added Defendants are barred by the statute of limitations, and summary judgment for these defendants is proper. It is therefore unnecessary to discuss the elements of Wallace's excessive force or failure to intervene claims, or the Defendants' qualified immunity defense. The only remaining claims are the Delaware tort actions against Huston, Graham, and Simpler for intentional, reckless, or negligent infliction of emotional distress.

## B. Delaware Tort Actions

The Defendants argue that, in the absence of any pending federal claims, the supplemental state law claims should be dismissed for want of subject matter jurisdiction. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." On the flipside of this rule, however, "district courts may decline to exercise supplemental jurisdiction over a [supplemental claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." § 1367(c). The court agrees that, having dismissed Wallace's § 1983 claims, there is no legitimate basis for exercising jurisdiction over the supplemental state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed."); *see also Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."); *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 913 (3d Cir. 1984) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Even if the court were to exercise jurisdiction, the claims would still fail because Wallace has not provided any evidence that Huston, Graham, or Simpler had any participation in Wallace's actual arrest. The record shows that Graham—the probation officer—took no further action after assisting with the initial search of Wallace's residence. (D.I. 112 at A-81.) Although Huston

8

prepared the search and arrest warrants for Wallace, he was not present at the time of arrest. (D.I. 113 at A-115.) Finally, Simpler was present at the Days Inn and had some involvement leading up to the execution of the warrants, but he took no part in the "apprehension or arrest" of Wallace. (D.I. 112 at A-86.) Therefore, to the extent Wallace has pointed to any actual conduct, there is no evidence to support an inference that Huston's, Graham's, or Simpler's actions—whether they were intentional, reckless, or negligent—*caused* Wallace's emotional distress. With no evidence of causation, Wallace's state law claims fail.

## V. CONCLUSION

All of the claims against the Newly Added Defendants are barred by the statute of limitations. Moreover, the court lacks jurisdiction to entertain Wallace's state law claims against the remaining defendants Huston, Graham, and Simpler; in any event, these claims also fail as a matter of law. The court grants the Defendants' motion for summary judgment (D.I. 110) in full.

Dated: February 26, 2015

_____
UNITED STATES DISTRICT JUDGE